UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA T. BERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. EDCV 13-158 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.　SUMMARY

On January 25, 2013, plaintiff Joshua T. Berry ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 4, 2013 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 29, 2003 and September 29, 2003, respectively, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 15, 187). Plaintiff asserted that he became disabled on June 1, 2002, because he has been partially sighted since birth. (AR 196-97). The Administrative Law Judge ("ALJ") examined the medical record and held hearings on September 14, 2005, December 21, 2005, and June 7, 2007, during which medical experts, vocational experts and plaintiff testified. (AR 24-114).

On June 15, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 15-21). The Appeals Council denied plaintiff's application for review of the ALJ's Pre-Remand Decision. (AR 6).

On August 25, 2010, this Court entered judgment reversing and remanding the case for further proceedings because the ALJ had improperly evaluated the credibility of plaintiff's subjective complaints. (AR 400-09). The Appeals Council in turn remanded the case for a new hearing. (AR 410). On remand, the ALJ held a hearing on February 23, 2011 ("Post-Remand Hearing"), during which the ALJ heard testimony from plaintiff, a vocational expert, and two medical experts, including board certified ophthalmologist, Dr. Patrick McCaffery ("Dr. McCaffery"). (AR 419, 461-87).

///
///
///

On October 14, 2011, the ALJ again determined that plaintiff was not disabled through the date of the decision.[2] (AR 371-87). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: compound myopic astigmatism bilaterally, small degree of pendular nystagmus, optic atrophy (described in narrative but not in examination notes), and congenital amblyopia (AR 374); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 376); (3) plaintiff retained the residual functional capacity to perform work at all exertional levels with certain nonexertional limitations[3] (AR 376); (4) plaintiff could perform his past relevant work as a box boy (AR 384); (5) alternatively, there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically hand packager, kitchen helper, and toy assembler (AR 385-86); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 378).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

---

[2] The ALJ stated that the summary of the medical evidence of record from his June 15, 2007 decision was incorporated by reference into, and thus supplemented by, his October 14, 2011 decision. (AR 371).

[3] The ALJ determined that plaintiff had limited depth perception involving small objects and limited color vision, and could not work around dangerous, unguarded and moving machinery or at unprotected heights. (AR 376).

(quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

///

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff argues, in part, that a reversal or remand is warranted to permit the ALJ to consider new evidence presented to the Appeals Council which suggests that plaintiff meets or equals Listing 2.02. (Plaintiff's Motion at 4-6). As discussed in detail below, the Court agrees.

///

A. **Pertinent Facts**

Visually evoked response testing ("VERT") by various doctors over time measured plaintiff's visual acuity with best correction to be anywhere from 20/80 to 20/400. (AR 263 [left eye ("L") 20/200, right eye ("R") 20/200 (1/21/04)]; 294 [L 20/80, R 20/80 (12/26/02)]; 296 [L 20/80, R 20/80 (12/16/03)]; 319 [L 20/100, R 20/100 (10/8/05)]; 328 [L no vision, R 20/200 (3/22/06)]; 334C [L 20/280, R 20/280 (7/15/09)]; 334D [L 20/100, R 20/100 (7/13/09)]; 334E [L 20/280, R 20/280 (2/19/09)]; 334J [L 20/400, R 20/400 (9/23/2010)]; 347 [L 20/400, R 20/400 (2/8/07)]; 349 [L 20/100, R 20/80 (7/13/98)]).

At the Post-Remand hearing, Dr. McCaffery testified that he had reviewed all of the medical evidence, and opined, in pertinent part, that (i) plaintiff had compound myopic astigmatism in each eye with gradual reduction in visual acuity, a small degree of pendular nystagmus, optic atrophy (in doctor narratives but not examination notes), and congenital amblyopia (*i.e.*, "reduced vision for which there is no apparent physical explanation") (AR 473-74, 477); (ii) plaintiff likely "[could] not see better than 20/80, probably 20/100," but it was difficult to determine with any certainty the full extent of plaintiff's limitation given significant inconsistencies in the results of plaintiff's visual acuity testing (AR 477-78); (iii) although some medical records reflected that plaintiff had visual acuity of 20/280 or worse, plaintiff's congenital nystagmus and congenital amblyopia would not cause such significant vision loss (AR 478); (iv) while plaintiff "very likely" had macular degeneration (which "occur[s] in high myopic people"), and retinal changes could account for the significant degradation in plaintiff's visual acuity, the record lacked evidence from "a competent examiner" of any such physical impairment in plaintiff's eyes (AR 478-79, 481-82); (v) an optical coherence tomography ("OCT") scan of plaintiff's retina could definitively resolve whether there was a physical basis for the significant, but unexplained,

///

fluctuation in plaintiff's perceived visual acuity (AR 479, 481-82, 484); and (vi) an OCT scan was neither painful nor expensive. (AR 485).

At the Post-Remand Hearing, the ALJ observed that it was not unusual to see significant inconsistencies in medical testing, but in plaintiff's case the usual factors which could help resolve the conflicting evidence were absent. (AR 480). Accordingly, the ALJ stated that he would "act on [Dr. McCaffery's] recommendation" and adjourned the hearing essentially because he "[did not] see any easy solution" without the recommended OCT scan.[4] (AR 486).

In the Post-Remand Decision, however, the ALJ essentially determined that Listings 2.02 (loss of visual acuity), 2.03 (contraction of visual field) and 2.04 (loss of visual efficiency) did not apply because plaintiff's pathology did not support the findings of some medical providers that impairment in plaintiff's visual acuity was "equivalent in severity to the criteria of a listed impairment." (AR 376, 382).

In connection with his exceptions to the Post-Remand Decision, plaintiff submitted new evidence to the Appeals Council (which was made part of the record) including a letter dated May 27, 2011, from Dr. Jason S. Ng who examined plaintiff and opined, in part, that (1) plaintiff's "distance visual acuities with habitual correction ('hard' contact lenses) were 20/200 to 20/300 OD (right eye) and 20/200 to 20/300 OD (left eye) . . . with a subjective impression that the left eye was somewhat worse" (AR 432); and (2) an OCT scan of plaintiff's eyes "indicated a thin and enlarged foveal area with abnormal test indices in the foveal area, suggesting a maculopathy" (collectively "Dr. Ng's Opinions"). (AR 432-33).

///
///

---

[4] As noted in the Post-Remand Decision, although the ALJ ordered an ophthalmological consultative examination, the State Agency declined to order the OCT scan recommended by Dr. McCaffery. (AR 382).

In a letter granting plaintiff additional time to file a civil action, the Appeals Council stated that it had considered plaintiff's exceptions but "found no reason under [Social Security] rules to assume jurisdiction." (AR 355A).

### B. Pertinent Law

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in a listing. See 20 C.F.R. §§ 404.1520(d), 416.920(d). An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria in a listing, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.[5] Sullivan, 493 U.S.

---

[5]Under Social Security regulations, medical equivalence can be found in three ways:

(1) If you have an impairment that is described in [the Listing of Impairments]. . . but [¶] . . . [y]ou do not exhibit one or more of the findings specified in the particular listing, or [¶] . . . [y]ou exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing, [¶] . . . [w]e will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in [the Listing of Impairments] . . . , we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing . . . , we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal

(continued...)

at 531; see 20 C.F.R. §§ 404.1526(b), 416.926(b); SSR 83-19 (impairment is "equivalent" to a Listing only if claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like claimant's impairment).

Although a claimant bears the burden of proving that he has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (plaintiff must present plausible theory as to how an impairment or combination of impairments equals a listed impairment).

**C.   Analysis**

Here, a remand is appropriate to permit the ALJ to consider plaintiff's new evidence and to re-evaluate whether plaintiff has a visual impairment which meets or medically equals Listing 2.02.[6]

---

[5](...continued)
medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. §§ 404.1526(b), 416.926(b).

[6]Since the Appeals Council included Dr. Ng's Opinions in the administrative record, this Court also considers such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error. See Brewes v. Commissioner of Social Security Administration, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of
(continued...)

First, the record contains evidence that Listing 2.02 plausibly applies in plaintiff's case. In order to be considered disabled under Listing 2.02, a claimant must show that he has a loss of central visual acuity and that the remaining vision in his better eye after best correction is 20/200 or worse. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.02; see also 42 U.S.C. § 1382c(a)(2) ("An individual shall be considered to be blind for purposes of this subchapter if he has central visual acuity of 20/200 or less in the better eye with the use of a correcting lens."). As noted above, several VERT reports documented impairment in plaintiff's visual acuity which appears to meet or exceed the criteria required by Listing 2.02 (*i.e.*, "20/200" [AR 263, 328]; "20/280" [AR 334C, 334E]; "20/400" [AR 334J, 347]). Dr. Ng also opined that plaintiff's "distance visual acuities with habitual correction ('hard' contact lenses) were 20/200 to 20/300 OD (right eye) and 20/200 to 20/300 OD (left eye) . . . ." (AR 432).

Second, while Dr. McCaffery did testify that there was no evidence of pathology which supported the extent of plaintiff's alleged "visual acuity demise," the medical expert did not find, as the ALJ suggests (AR 382), that VERT results which reflect listing-level vision loss for plaintiff (*i.e.*, corrected vision of 20/200 or worse) were necessarily invalid. To the contrary, as noted above, Dr. McCaffery stated that plaintiff "very likely" had changes in the macular of his eyes (which could explain significant fluctuation in visual acuity test results), but the presence of any such macular changes could not definitively be confirmed without an OCT scan of plaintiff's eyes. (AR 477-84). Thus, at most, Dr.

---

[6](...continued)
the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted); see also Taylor v. Commissioner of Social Security Administration, 659 F.3d 1228, 1232 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error") (citations omitted).

McCaffery opined that the record was inconclusive as to the basis for plaintiff's dramatic loss of perceived visual acuity. (AR 477-78, 484).

Finally, in light of plaintiff's new OCT scan which suggests "maculopathy" (AR 432-33), and Dr. McCaffery's opinion that macular changes could explain plaintiff's dramatic loss of perceived visual acuity, the Court cannot conclude that substantial evidence supports the ALJ's determination at step three that plaintiff did not meet or equal Listing 2.02.

Accordingly, a remand is appropriate to permit the ALJ to reevaluate his findings at step three in light of plaintiff's new evidence.

## V.   CONCLUSION[7]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  July 25, 2013

                                                    /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[8] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).